PERFECTO and ANTONIA RODRÍGUEZ VIERA, ETC., Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 343.　　Decided December 31, 1963.

*Manuel I. Vallecillo* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: The Secretary of the Treasury prepared, at the government's initiative, returns for taxpayers "Perfecto and Antonia Rodríguez Viera" and served them with

notice of deficiencies for the taxable years 1945, 1946, 1947, 1948, and 1950,[1] on the assumption that during those periods the Rodríguez, brother and sister, were engaged in farming —operation of a coconut farm—as a joint venture. As a result of the death of Perfecto Rodríguez Pérez on November 7, 1945, this enterprise entered the fiscal roll.

1. As to the year 1945, the official return treated as income of the entity the proceeds from the sale of an inventory of 694 sacks of coconuts already felled and gathered by the predecessor when death overtook him. It must be stated here that the parties expressly stipulated that this inventory "constituted part of the estate left upon the death of Perfecto Rodríguez Pérez," which was an asset of the hereditary estate to be distributed among his four children Perfecto, Antonia, David, and José. The coconuts were harvested on a farm which the deceased had leased to the first two. Appellants Perfecto and Antonia took the necessary steps for the sale of the crop, having incurred expenses amounting to $1,145.10, and disposed of the same by sale to Alberto Biascoechea early in December of that year for the price of $8,011. In their individual returns corresponding to 1945, appellants reported as income the price received and claimed as a deduction the expenses incurred after dividing both items in half.

After making a detailed statement of the facts in order to conclude that appellants actually constituted a joint venture for tax purposes, the trial court said that "The foregoing conclusion also includes the sale of the coconuts which remained on the farm upon termination of the lease in 1945. We do not know the terms of the lease contract as to the

---

[1] In order to enable this Court to be in a better position to pass on actions challenging deficiencies, it is desirable for the trial courts to request evidence of the tax returns and deficiency notices. After all, this evidence constitutes in itself the initial stage of the controversy.

disposition of the products left on the farm at the date of termination. We assume, as does defendant, that the products belonged to the owners-lessors, since they took possession of the products, sold them, and divided the profits among them- selves. As has been seen, the evidence offered by plaintiffs to the effect that subsequently they shared the proceeds of the sale with their brothers is not satisfactory. The evidence is very inaccurate on this point and does not meet the burden of satisfactory proof." We disagree.

It cannot be asserted that the terms of the lease contract respecting the disposition of the fruits severed at the time of the termination thereof are not known, since, as stated at the outset of this opinion, the parties expressly agreed that these fruits formed part of the hereditary estate, which agreement excludes the contractual condition, unexplainably implied by the trial judge, that they belonged to the lessors. There is no adequate reason either to support such inference that appellants disposed initially of the proceeds and divided the price among themselves. It was not a concealed trans- action through which it was sought to deprive the other heirs of their share, since the evidence shows that the sale was carried out, not by appellants, but by their brother José. Throughout the entire testimony of Antonia Rodríguez Pérez the predominant note—expressed with noticeable simplicity —was that the family in question is joined by ties of cordiality and affection, especially on the part of the brothers José and David who, being professionals, were not much concerned about these business matters. The finding that it was not satisfactorily established that the error in the distribution was subsequently corrected is not warranted. The testimony offered explains that "there was a mistake by ignorance"; that they disposed of the coconuts in the belief that these belonged to them as owners of the farm; that the other two brothers did not complain, and that when they realized

their error appellants reimbursed each some $1,200 in cash.[2] Neither the payment nor the receipt was set forth in writing. It is significant that in the redirect examination it was asserted that the value of the coconuts was reported in the return for the purposes of the inheritance tax assessment.[3] Furthermore, José, appellant's brother, testified and although he was questioned on the receipt of his share in the sale of the coconuts, nothing was clarified by the Secretary on this point.[4] In our opinion, this is one of those cases in which it may be properly decided that the presumption of correctness of the determinations of the Secretary shall not prevail, since the rejection by the trial court of the explanation offered by the taxpayer on the sole ground that there are no "cancelled checks, receipts or other means" amounts to the same thing. In *Carrión* v. *Treasurer of P.R.*, 79 P.R.R. 350 (1956), where we discussed the scope and effect of such presumption, we said that "The mere fact that there were no detailed lists of bills or vouchers, invoices, receipts, or other records, does not automatically destroy the right to claim a deduction for travel and business expenses which were ordinary and necessary." *Cf. Collazo* v. *Sec. of the Treasury*, 82 P.R.R. 629 (1961).

---

[2] The trial court determined that "no evidence was presented on the amounts paid to each of said brothers nor the dates of the alleged payments." As we have seen, the amount paid was established and, as to the date, this is not an element of proof so important as to be controlling. It would suffice to prove, if necessary, that the payment was tendered prior to the hearing.

[3] Upon questioning by the court, it was made clear that "the eight thousand dollars" did not appear as part of the inheritance, but this does not mean that the coconut inventory was excluded from the inheritance.

[4] The following part of appellant's testimony carries great weight in this respect:
"Did they give you a receipt for that amount?
No, sir.
Was there any document?
No, sir, there is none, *they can testify*."

2. In the light of our doctrine in tax matters, we have examined the findings of fact on which the trial court concluded that as of 1946 Perfecto and his sister Antonia Rodríguez Viera were engaged in a joint venture to operate the coconut farm which they owned in common, and we see no reason for disturbing the same.[5]

The judgment rendered by the Superior Court, San Juan Part, on May 13, 1960, will be modified setting aside the 1945 deficiency imposed upon appellants, and, as thus modified, it will be affirmed.

---

[5] *Suárez* v. *Sec. of the Treas.*, 85 P.R.R. 372 (1962); *Heirs of Castillo* v. *Sec. of the Treas.*, 83 P.R.R. 94 (1961); *Calaf* v. *Tax Court*, 73 P.R.R. 758 (1952); *Community of the Heirs of Fajardo* v. *Tax Court*, 73 P.R.R. 499 (1952); *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 449 (1949); *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 93 (1949); *Vías* v. *Tax Court*, 67 P.R.R. 459 (1947); *Puig* v. *Tax Court*, 65 P.R.R. 691 (1946).

See, also, 6 Mertens, Law of Federal Income Taxation, § 35.05 (Zimet Revision); Barret and Seago, Partners and Partnerships: Law and Taxation, C. 2, § 7 (Mechise Co., 1956); Little, Federal Income Taxation of Partnership, § 2.7 (Little, Brown & Co., 1952); Taubman, *What Constitutes a Joint Venture*, 41 Cornell L.Q. 640 (1956).